UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| United States of America, | Case No. 3:18-cr-566 |
| Plaintiff | |
| v. | MEMORANDUM OPINION AND ORDER |
| Rayshon Bradford, | |
| Defendant | |

## I. INTRODUCTION

Defendant Rayshon Bradford moves to dismiss the indictment, arguing it was issued in violation of his right to a disinterested prosecutor. (Doc. No. 10). Alternatively, Bradford moves to suppress all evidence seized pursuant to the December 8, 2017 search warrant, which he asserts was issued without probable cause. (Doc. No. 11). The government opposes both motions. (Doc. Nos. 13, 14, & 17). Bradford filed reply briefs in support of each of his motions. (Doc. Nos. 15 & 16).

## II. BACKGROUND

On or about December 7, 2017, Sandusky County, Ohio Deputy Sheriff Detective Sergeant Kenneth S. Arp began investigating a shooting which occurred near the intersection of West State Street and Everett Road in Fremont, Ohio. (Doc. No. 10-1 at 3). A witness to this shooting claimed shots were fired from a "dark colored Truck" at a "tan colored vehicle." (*Id.*). Security footage from a nearby business, The Cookie Lady, confirmed that a chase occurred between a dark-colored truck and a tan Buick LaSabre around the same time the shooting allegedly occurred. (*Id.*). Another witness also attested to this chase and hearing "pops" associated with gunfire. (*Id.*).

A "Captain Meggit" investigated the area of the shooting on December 8, 2017, in the hopes of finding shell casings or vehicle debris connected with to the case. (*Id.*). He found what appeared to be a part of a mirror with a part number and took it to "an Auto Dealer" for identification. (*Id.*). This "Auto Dealer" allegedly "ran the part number and advised it came back to a GMC Truck." (*Id.*).

Detective Sergeant Arp articulated the facts above in the affidavit in support of the December 8, 2017 search warrant and alleged that,

> Through a previous report from the Fremont Police Department (Report #17-11-10764) Investigators were aware that Michael Britner reported that Rayshon Bradford drove a truck that matched the description of the one seen from the video surveillance from The Cookie Lady. The truck was consistent with the truck that witnesses had described. In Michael Britner's statement he reported that Mychal Scott had hung out of the passenger side door and pointed a pistol at him.

(*Id.*). Based upon this information, Detective Sergeant Arp sought a search warrant "for Residence of 1109 Springwood Drive, … outbuildings, vehicles, curtilage, and vehicle located in driveway which is a Grey 2017 GMC Truck bearing Ohio Registration HDM8390 and seize firearms, indicia of firearms, ammunition, electronic devices, recording devices computers, cellphones, Grey 2017 GMC Truck bearing Ohio Registration HDM8390." (*Id.*). Although both the Residence and GMC Truck in question were owned by Laicey Everett, there is no mention of her connection to the shooting or any of those individuals named in the affidavit.

Sandusky County Judge John P. Dewey authorized the search warrant based upon Detective Sergeant Arp's affidavit on December 8, 2017. (Doc. No. 10-1).

After executing the first search warrant, Fremont Police Department Detective Jason P. Kiddey penned an affidavit in support of a second search warrant for the contents of Everett's "2017 grey GMC Sierra pickup truck bearing Ohio Registration of BDM8390 and a V.I.N. of 1GTV2LEC7HZ153955." (Doc. No. 10-2). In this affidavit, Detective Kiddey reiterated the same information contained in the affidavit of Detective Sergeant Arp. (*Id.* at 2-3). But Detective Kiddey

2

added that "Investigators are also aware that Rayshon Bradford frequents the residence of 1109 Springwood Dr., Fremont. Investigators then went to the address of 1109 Springwood Dr. and located a dark colored GMC truck that had damage consistent with the vehicle pieces that were located at the corner of Napoleon and Everett." (*Id.* at 3). Detective Kiddey also explained that during the execution of the first search warrant on December 8, 2017,

> A 2017 gray GMC Sierra pickup truck bearing the Ohio Registration of HDM8390 and a V.I.N. of 1GTV2LEC7HZ53955 was seized as evidence. Four (4) .40 caliber spent casings were found in the bed of the vehicle. A rifle box was also seen inside the vehicle as well. The recovered passenger side mirror parts recovered by Captain Meggit on December 8th were found to fit the damaged side mirror of the GMC Sierra and matched the paint color. Due to a lack of cooperation of the owner, Laicey Everett and her boyfriend, Rayshon Bradford[ ], the vehicle was towed to the City of Premont Vehicle Maintenance Building located at 709 S. Front Street and was parked inside until a second search warrant could be obtained.

(*Id.* at 4). Based on this information, Judge Dewey issued the second search warrant on December 11, 2017.

When the vehicle was searched, a rifle box for a Century Arms, Model AK63DS was discovered. This discovery lead investigators to investigate the purchase of that rifle; Mr. Bradford was charged subsequently by a federal grand jury with one count of False Statement in the Acquisition of a Firearm, 18 U.S.C. §§ 922(a)(6) and 2. (Doc. No. 1).

## IV.  MOTION TO DISMISS

Bradford moves to dismiss the indictment on grounds of prosecutorial misconduct. Specifically, he claims Sandusky County, Ohio Prosecutor at the time, Timothy Braun, violated Rule 1.9 of the Ohio Rules of Professional Conduct and Standard 3-1.7(d) of the American Bar Association Standards for the Prosecution Function by participating in the prosecution of Bradford, whom Braun represented in a 2016 criminal matter.[1]

---

[1] Bradford also cites Braun's recent negligent assault conviction, the Complaint for Removal filed by Ohio Governor Mike DeWine and Ohio Attorney General David Yost, and the fact that Braun also participated in prosecuting Bradford for criminal charges at least once in 2018. But these facts are

At the outset, I will note that the American Bar Association Standards for the Prosecution Function "are aspirational or describe 'best practices,' and are not intended to serve as the basis for the imposition of professional discipline, to create substantive or procedural rights for accused or convicted persons, to create a standard of care for civil liability, or to serve as a predicate for a motion to suppress evidence or dismiss a charge."[2]  Therefore, whether Braun violated these Standards is irrelevant to Bradford's motion to dismiss.

Remaining is Bradford's argument that Braun violated Rule 1.9 of the Ohio Rules of Professional Conduct.  Rule 1.9 governs a lawyer's duty to his former client, providing,

> (a) Unless the former client gives *informed consent, confirmed in writing*, a lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a *substantially related matter* in which that person's interests are materially adverse to the interests of the former client.
> (b) Unless the former client gives *informed consent, confirmed in writing*, a lawyer shall not *knowingly* represent a person in the same or a *substantially related matter* in which a *firm* with which the lawyer formerly was associated had previously represented a client where both of the following apply:
>> (1) the interests of the client are materially adverse to that person;
>> (2) the lawyer had acquired information about the client that is protected by Rules 1.6 and 1.9(c) and material to the matter.
> (c) A lawyer who has formerly represented a client in a matter or whose present or former *firm* has formerly represented a client in a matter shall not thereafter do either of the following:
>> (1) use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client or when the information has become generally *known*;
>> (2) reveal information relating to the representation except as these rules would permit or require with respect to a client.

Ohio Rules of Prof'l Conduct R. 1.9 (2007).

---

not germane to the present inquiry.  Braun's general character is not at issue here.  Instead, what matters here is whether Braun committed prosecutorial misconduct in this case.
[2] Standard 3-1.1(b), https://www.americanbar.org/groups/criminal_justice/standards/ProsecutionFunctionFourthEdition/ (last visited Oct. 21, 2020).

It is undisputed that Braun previously represented Bradford in a 2016 criminal matter. (Doc. No. 10-3). But Bradford does not allege the charges he faced in 2016 are the same or substantially related to his 2017 prosecution.

Rather, he contends only that Braun used information obtained through his former representation of Bradford. Bradford does not point to any specific evidence of any misused information known only to Braun because of his former representation. Instead, he relies on the following bare assertion: "Based upon how lacking in specifics and substance the first Affidavit was (see Defendant's Motion to Suppress), one can suppose that he did." (Doc. No. 10 at 8). This alone is insufficient. Although Braun may not have followed best practices in participating in the prosecution of Bradford, there is no evidence to suggest he violated the Ohio Rules of Professional Conduct or committed prosecutorial misconduct in doing so.

Even if Braun's involvement in the prosecution was prosecutorial misconduct, Bradford would be required to show prejudice to succeed on his motion to dismiss. *Bank of Nova Scotia v United States*, 487 U.S. 250, 263 (1988).

As noted above, there is no evidence to suggest Braun used knowledge acquired through his representation of Bradford. The only evidence to suggest Braun was involved in this case are: (1) Braun's signature on the December 11, 2017 order to seal the search warrant and affidavit approved by Judge John P. Dewey, (Doc. No. 10-4); and (2) Braun's name printed on a Sandusky County Common Pleas Court grand jury subpoena of Lock-It-Up Storage. (Doc. No. 10-5). Bradford was not prejudiced by either.

First, because this case was not prosecuted in state court, any participation by Braun in the state grand jury proceedings did not prejudice Bradford in this case. Second, because the search warrant Braun moved to seal is before me for review now, the motion to seal the search warrant did not prejudice Bradford.

In conclusion, there is no evidence to show Braun committed prosecutorial misconduct. Even if Braun should have disqualified himself, Bradford cannot show he was prejudiced by Braun's involvement in this prosecution. Therefore, Bradford's motion to dismiss is denied.

### III.    MOTION TO SUPPRESS

Bradford seeks to suppress "all evidence seized from the residence at 1109 Springwood Drive, Freemont, Ohio and a 2017 GMC Truck, with Ohio registration number HDM8390, pursuant to a search warrant executed December 8, 2017." (Doc. No. 11 at 1). He asserts probable cause did not exist to the issue the warrant, arguing the affidavit in support of the motion lacked the requisite supporting and particularized facts. In response, the government first urges me to conclude Bradford lacks standing to challenge the warrant. Alternatively, the government alleges there was probable cause to issue the warrant. Finally, the government contends even if there was not probably cause to issue the warrant, the evidence should not be suppressed because the detectives relied in good faith on the judge's probable cause finding.

**A.    Standing**

"The concept of standing in Fourth Amendment cases can be a useful shorthand for capturing the idea that a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search." *Byrd v. United States*, 138 S.Ct. 1518, 1530 (2018). But unlike Article III standing, the concept of Fourth Amendment standing is substantive not jurisdictional and need not be assessed before reaching the merits of the claim. *Id.* at 1530-31. In any case, to succeed on the merits on this motion to suppress, Bradford "has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978).

"In order to claim Fourth Amendment protection, a defendant must … demonstrate that he possessed a legitimate expectation of privacy in the area searched." *United Stated v. Whitehead*, 415

6

F.3d 583, 587 (6th Cir. 2005); *see also Rakas*, 439 U.S. 128 at 143-44. In the Sixth Circuit "[a] defendant must satisfy a two-pronged test to show a legitimate expectation of privacy: 1) he must manifest an actual, subjective expectation of privacy; and 2) that expectation is one that society is prepared to recognize as legitimate." *United States v. Pollard*, 215 F.3d 643, 647 (6th Cir. 2000) (citing *Minnesota v. Carter*, 525 U.S. 83, 88 (1998) ("[I]n order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable.")).

Factors to be considered when assessing whether the defendant had a subjective expectation of privacy include:

> "the person's proprietary or possessory interest in the place to be searched or item to be seized[;]" "whether the defendant has the right to exclude others from the place in question; whether he had taken normal precautions to maintain his privacy; whether he has exhibited a subjective expectation that the area would remain free from governmental intrusion; and whether he was legitimately on the premises."

*United States v. Waller*, 426 F.3d 838, 844 (6th Cir. 2005) (quoting *United States v. King*, 227 F.3d 732, 749 (6th Cir. 2000)). Here, there is no dispute that Bradford did not own the GMC Truck at issue. But the evidence suggests Bradford had a legitimate expectation of privacy in the vehicle.

First, the affidavit states that Bradford "drove" a truck like the one authorized to be searched and seized. (Doc. No. 10-1). In context, this language suggests Bradford possessed and controlled the keys to this vehicle with sufficient frequency that it could be identified as his.

Second, the items found within the truck pursuant to the December 11, 2017 warrant included: (1) a brown leather wallet owned by Bradford found in the center console; (2) Bradford's ID card found in the center console; and (3) Bradford's birth certificate found in the "rear passenger." (Doc. No. 15-2). Bradford undoubtedly had a proprietary interest in these items seized with the truck. But beyond that, the nature of these seized belongings evinces Bradford's subjective

7

belief that the items would remain free from intrusion – that he could exclude others from accessing these personal and essential items held safely in the truck.

And third, Bradford was legitimately at the scene with the owner of the truck at the time the December 8, 2017 warrant was executed. (Doc. No. 10-2 at 4). In fact, in the December 11, 2017 affidavit, Detective Kiddey noted that,

> Due to a lack of cooperation of the owner, Laicey Everett and her boyfriend, Rayshon Bradford,, [sic] the vehicle was towed to the City of Premont Vehicle Maintenance Building located at 709 S. Front Street and was parked inside until a second search warrant could be obtained.

(*Id.*). Bradford's protests to the search and seizure of the truck further support a finding that Bradford had a subjective expectation of privacy in the truck.

Concluding Bradford had a subjective expectation of privacy in the truck, the only remaining question is whether that expectation was reasonable.

The truck in question was owned by Bradford's girlfriend, who authorized Bradford's use of the truck and whose house Bradford "frequent[ed]." (Doc. No. 10-2 at 3). In light of this, the fact that Bradford would keep personal items in the truck and expect them to remain private is certainly reasonable. Therefore, Bradford has established Fourth Amendment "standing."

**B.     Probable Cause**

The Fourth Amendment requires that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. "Probable cause" to issue a warrant exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Id.* at 232. As such, the issuing magistrate must consider "all the circumstances set forth in the affidavit before him" and "make a practical, common-sense decision" as to whether probable cause exists. *Id.* at 238.

"A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'" *Id.* at 236 (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)). The reviewing court must only "determine whether, in light of the totality of the circumstances, the magistrate had a 'substantial basis' for concluding that 'a search would uncover evidence of wrongdoing[.]'" *United States v. Sonagere*, 30 F.3d 51, 53 (6th Cir. 1994) (quoting *Gates*, 462 U.S. at 236)). "[R]eview of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four-corners of the affidavit." *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005).

The government admits the affidavit in support of the December 8, 2017 warrant does not provide "an extensive amount of cause[,]" (Doc. No. 13 at 5-6), but urges me to uphold the warrant because the affidavit "contains the description of a crime, a description of property (vehicle) used to commit the crime, and a specifically identified vehicle that matched the description of the vehicle used to commit the crime." (*Id.* at 5).

It is true that the affidavit generally describes the shooting as between occupants of a "dark-colored Truck" and a "tan Buick LaSabre." Giving deference to the issuing judge, the affidavit could even support a finding that the "dark colored Truck" was a GMC. But it fails to state any facts to suggest the "dark-colored" GMC Truck was Everett's Truck. More importantly, the affidavit fails to provide any basis from which one could conclude any evidence of wrongdoing would be discovered in Everett's residence.

The deficiency of the first affidavit is only highlighted by the second. Although the affidavit in support of the December 11, 2017 warrant states that Bradford "frequent[ed]" the residence and was the boyfriend of the residence and vehicle's owner, (Doc. No. 10-2 at 3-4), the same is not true of the affidavit in support of the December 8, 2017 warrant. Similarly lacking from the first affidavit is the following statement found in the second: "[i]nvestigators then went to the address of 1109

9

Springwood Dr. and located a dark colored GMC truck that had damage consistent with the vehicle pieces" found near the scene of the incident and used to identify the "dark colored vehicle." (*Id.* at 3). Without these details, there is nothing to connect Bradford to Everett's residence or the shooting to Everett's truck.

In sum, the affidavit in support of the December 8, 2017 search warrant fails to provide the requisite "'nexus between the place to be searched and the evidence sought.'" *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (quoting *United States v. Van Shutters*, 163 F.3d 331, 336-37 (6th Cir. 1998)). Therefore, even viewing the affidavit with great deference, the affidavit fails to establish probable cause to search Everett's home and vehicle.

**C.     Good Faith**

Even though probable cause did not exist to issue the December 8, 2017 warrant, the evidence may still be admitted under the good-faith exception to the exclusionary rule. *United States v. Leon*, 468 U.S. 897 (1984); *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005). To determine whether the good-faith exception applies, the court must answer one objective question: "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n. 23. This "determination of good-faith reliance, like a determination of probable cause, must be bound by the four corners of the affidavit." *United States v. Laughton*, 409 F.3d 744, 751 (6th Cir 2005).

The good-faith rule does not apply when "the affidavit was 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable,' or in other words, where 'the warrant application was supported by [nothing] more than a "bare bones"' affidavit[.]'" *United States v. Weaver*, 99 F.3d 1372, 1380 (6th Cir. 1996) (quoting *Leon*, 468 U.S. at 915). "[T]o avoid the bare-bones designation and thus be one upon which an officer can rely in good faith," "[a]n affidavit need only present '*some* connection, regardless of how remote it may have been,' *United States v.*

10

*White*, 874 F.3d 490, 497 (6th Cir. 2017) …, or, in other words, establish a 'minimally sufficient nexus between the illegal activity and the place to be searched.' *United States v. Brown*, 828 F.3d 375, 385 (6th Cir. 2016) (quoting *United States v. Carpenter*, 360 F.3d 591, 596 (6th Cir. 2004) (en banc))." *United States v. Christian*, 925 F.3d 305, 313 (6th Cir. 2019).

The government argues the affidavit is not "bare bones" because it states: "the description of the vehicle used in the crime, that the defendant had been involved in a similar crime in a similar vehicle, and where that vehicle was located." (Doc. No. 13 at 9). But the government ignores the affidavit's failure to state any connection between Bradford and Everett. In turn, the affidavit fails to establish a "minimally sufficient nexus" between Bradford and Everett's residence or Everett's truck. Further, even if the affidavit established a "minimally sufficient nexus" between the shooting and *a* dark-colored GMC truck, it fails to state facts to establish any sort of nexus between the shooting and a residence.

Because this "bare bones" affidavit failed to state any connection between the illegal activity and the places to be searched, the good-faith rule does not apply. Therefore, all evidence seized pursuant to the December 8, 2017 warrant must be excluded.

But I cannot conclude the same for evidence seized pursuant to the December 11, 2017 warrant. Although Bradford generally asserts the affidavit in support of the December 11, 2017 warrant is "flawed in that it is a result of the first Affidavit that lacked probable cause and thus 'fruit' of the first, faulty warrant," (Doc. No. 11 at 7), he did not support this assertion with any facts or case law. Ultimately, "in seeking suppression of evidence the burden of proof is upon the defendant to display a violation of some constitutional or statutory right justifying suppression." *United States v. Feldman*, 606 F.2d 673, 679 n.11 (6th Cir. 1979). In light of my determination as to the December 8, 2017 warrant, Bradford is granted leave to articulate with specificity any relevant facts or case law in support of his general assertion.

## V. CONCLUSION

For the foregoing reasons, Bradford's motion to dismiss is denied. His motion to suppress the evidence seized pursuant to the December 8, 2017 warrant is granted. Should Bradford wish to further challenge the December 11, 2017 warrant as discussed above, he shall file a supplemental memorandum by February 15, 2021. Any opposition by the government to Bradford's challenge shall be filed fourteen days after the supplemental memorandum is filed.

So Ordered.

s/ Jeffrey J. Helmick  
United States District Judge